IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No C 04-3642 VRW |
| Plaintiff, | ORDER |
| v | |
| ALL FUNDS, INCLUDING CASH AND SECURITIES, LESS MARGIN, CONTAINED IN THE SMITH BARNEY BROKERAGE ACCOUNT NO 428-79380-15 HELD IN THE NAME OF DYKE LIMITED, | |
| Defendant. | |

The government moves for default judgment in this civil forfeiture action. Mot Def Judg (Doc #22). Because the court found this matter could be determined without oral argument, the scheduled hearing date was VACATED. See Civ LR 7-1(b). For the reasons set forth below, the court GRANTS the government's motion.

I

This civil forfeiture of all funds in a Smith Barney brokerage account (No 428-79380-15) ("account 428") arises from a

fraudulent scheme by Oliver Hilsenrath ("Hilsenrath") and David Klarman ("Klarman"), executive officers at US Wireless, Inc ("US Wireless"), to defraud the company's investors by unlawfully using their positions to issue shares of stock. Complaint (Doc #1) at 1 ¶ 3, 2 ¶¶ 6-8. Account 428 is held in the name of Dyke Limited, an offshore corporation. Id at 7 ¶ 33. The government filed a complaint under 18 USC § 981 for forfeiture of all funds in the account, which allegedly received proceeds traceable to the officers' fraudulent actions. The government then moved for default judgment against Dyke Limited's funds because Dyke Limited did not answer the complaint.

The government's complaint traces how the proceeds from the alleged fraud were transferred to account 428. According to the complaint, Hilsenrath and Klarman allegedly co-signed letters directing three separate issues of stock certificates to various offshore shell corporations under their control during the summer of 1999. Id at 2 ¶ 8. The three transfers of US Wireless shares apparently were made without adequate consideration for services rendered and, in two instances, were made to non-employees under the guise of an Employee Stock Purchase Plan. Id at 3-4 ¶ 14, 5 ¶ 20, 5-6 ¶ 24. Additionally, Klarman, while acting as general counsel, allowed trading restrictions for some stocks to be removed by writing an opinion letter falsely asserting that the shareholding company was unaffiliated with US Wireless and had held the shares for more than two years. Id at 4 ¶ 16. He also concealed that other stock was tainted by directing the change of the registered owner on the stock certificate. Id at 5 ¶ 21.
//

Hilsenrath and Klarman allegedly stole at least 174,616 shares of US Wireless stock under this scheme, which they later sold to generate gross proceeds of approximately $5,165,063. Id at 6 ¶ 29, 7 ¶¶ 30,32. According to the complaint, some of the proceeds were then transferred on April 3, 2001, to account 428 held by Dyke Limited. Id at 7 ¶ 31.

Dyke Limited's principal shareholder or partner is David Dahan ("Dahan"). Id at 7-8 ¶ 33. David Dahan and another investor, Haim Haruvi ("Haruvi"), raised money for American Toys, a corporation that later evolved into US Wireless. Id. Dahan and Haruvi allegedly knew about Klarman and Hilsenrath's fraudulent activity and demanded a portion of their ill-gotten gains in exchange for not reporting the transactions to the Securities and Exchange Commission. Id. On April 3, 2001, approximately $880,397 was transferred by wire from two offshore accounts, which were used for the receipt and sales of US Wireless stock, to account 428. Id at 7 ¶¶ 31,32.

An audit committee of US Wireless's board of directors investigated Hilsenrath and Klarman's suspicious stock transactions. Id at 8 ¶ 34. On May 26, 2001, the committee concluded that Hilsenrath and Klarman worked together to pay offshore entities excessive compensation via wire transfers of cash, stock and stock options. Id. In December 2003, Klarman pled guilty to federal mail fraud and money laundering charges arising from this scheme. Id at 8 ¶ 35. On January 15, 2004, Hilsenrath was charged with securities fraud for participating in the scheme. Id. Currently, both cases are pending in this district before Judge William H. Alsup. Id.

On August 27, 2004, the government filed a complaint for forfeiture of all funds contained in account 428. Doc #1. The government alleged the funds in the account constituted or were derived from proceeds traceable to Hilsenrath and Klarman's fraudulent sales of securities and money laundering transactions, and hence subject to forfeiture under 18 USC §§ 981(a)(1)(A) and (C). Id at 9 ¶ 42.

On September 23, 2004, the government served claimant Liquidating Trust of US Wireless Corporation, Wireless Location Services, Inc and Wireless Location Technologies, Inc ("Liquidating Trust"), through its attorney, Jennifer Scoliard, a copy of the notice of forfeiture action and the complaint. Doc #4. Liquidating Trust was created on June 25, 2003, under an order from the United States Bankruptcy Court for the District of Delaware stating that all of US Wireless's assets were to be transferred to the trust. Doc #6 at 5 ¶¶ 19,20. On October 26, 2004, Liquidating Trust filed a verified statement of interest to the defendant funds. Doc #6.

On October 1, 2004, the government served Dyke Limited through its attorney, Eric Krebs, a copy of the notice of forfeiture action and the complaint. Doc #5; Decl Stephanie M. Hinds (Hinds Decl; Doc #16, Ex 1) at 2 ¶ 3. On November 4, 11 and 18, 2004, notice of the forfeiture action was published in the Recorder, a San Francisco daily legal newspaper. Doc #11; Hinds Decl at 2 ¶ 4. On November 4, 2004, Dyke Limited filed a verified statement of interest to the defendant funds. Doc #8.

Dyke Limited then sought and obtained an extension to file its answer from November 24, 2004, until December 24, 2004.

4

1  Hinds Decl at 2 ¶ 5, Exh A.  In about late December 2004, counsel
2  for Dyke Limited informed the government that the company would no
3  longer pursue its claim to the defendant funds.  Hinds Decl at 2
4  ¶ 6.  The government subsequently informed the court and
5  Liquidating Trust regarding Dyke Limited's decision to withdraw its
6  claim in a joint case management statement filed on February 17,
7  2005.  Doc #14 at 2.  Although counsel for Dyke Limited was served
8  with the statement and notice of the conference, Dyke Limited did
9  not attend the case management conference on February 22, 2005.
10 Hinds Decl at 2 ¶ 6.  According to the government, a few weeks
11 later Dyke Limited's counsel advised the government that it had
12 changed its mind and intended to file an answer.  Mot Def Judg at
13 4:10-12.  To date, Dyke Limited has not filed an answer to the
14 government's complaint.
15         The government filed a motion for entry of default
16 against Dyke Limited on March 25, 2005, which was electronically
17 served on Dyke Limited through its attorney.  Doc #16.  The motion
18 was initially denied by the clerk on April 11, 2005.  Doc #17.  On
19 April 27, 2005, Liquidating Trust, the other party with an interest
20 in the defendant funds, agreed to settle with the government in
21 consideration for the government distributing the balance of the
22 funds in account 428 to them.  Doc #18 at 2:11-12.  On April 28,
23 2005, the court granted the government's renewed motion for entry
24 of default against Dyke Limited because it had failed an answer in
25 a timely fashion.  Doc #19.  The court clerk then entered default
26 on May 2, 2005.  Doc #20.  On June 23, 2005, the government filed a
27 motion for default judgment against Dyke Limited's interest in the
28 defendant funds and securities.  Mot Def Judg.

**II**

The court first examines whether the clerk's entry of default on May 2, 2005, was proper. The Supplemental Rules for Certain Admiralty and Maritime Claims (Supp Rules) govern in rem forfeiture proceedings. <u>United States v Real Property at 2659 Roundhill Drive</u>, 283 F3d 1146, 1149 n2 (9th Cir 2002). Under Admiralty Local Rule (Admir LR) 6-2, default may be entered upon a showing that:

> (a) Notice has been given as required by Admir LR 6-1;
> (b) The time to answer has expired, and
> (c) No one has filed a verified statement of right or interest in the property.

Admir LR 6-2. The court finds that the government has met all of these requirements.

First, Admir LR 6-2(a) provides that notice must be given as required by Admir LR 6-1, which states:

> (1) By publication as required in FRCP Supp (C)(4);
> (2) By service upon the master or other person having custody of the property; and
> (3) By service under FRCP 5(b) upon every other person who has not appeared in the action and is known to have an interest in the property.

Admir LR 6-1. Here, the government published notice of the forfeiture action in the Recorder for three consecutive weeks beginning on November 4, 2004. Hinds Decl at 2 ¶ 4. Additionally, on October 1, 2004, the government served Dyke Limited, holder of account 428, through its attorney. Doc #5. This service involved mailing a certified copy of the complaint to the corporation's last known address, which is authorized under FRCP 5(b)(2)(B). Doc #5; Hinds Decl at 2 ¶ 3. Finally, on September 23, 2004, the government served Liquidated Trust because the government knew the trust had an interest in the property. Doc #4. Accordingly, the

1 court finds that the government has satisfied the notice
2 requirements of Admir LR 6-1.
3         Second, the time to answer the government's complaint has
4 expired.  In its statement of interest filed on November 4, 2004,
5 Dyke Limited specifically indicated that its claim was not an
6 answer and it would "file its [a]nswer no later than 20 days after
7 the filing of this statement of interest or right (claim)."  Doc #8
8 at 1 n1.  Under Supp Rule C(6)(a)(iii), "a person who files a
9 statement of interest in or right against the property must serve
10 and file an answer within 20 days after filing the statement."
11 Although this court can extend the time to file an answer or claim,
12 the Ninth Circuit has held "the court's discretion is not
13 unbounded.  It should only exercise its discretion to grant
14 additional time where the goals underlying the time restriction and
15 the verification requirement are not thwarted."  <u>United States v
16 1982 Yukon Delta Houseboat</u>, 774 F2d 1432, 1436 (9th Cir 1985).  And
17 most courts seem to require strict compliance to Supp Rule C.  "In
18 order to have standing to challenge a forfeiture, a claimant must
19 strictly comply with the pleading requirements of Supplemental Rule
20 C(6)."  <u>United States v $288,914 in United States Currency</u>, 722 F
21 Supp 267, 270 (ED La 1989); see also <u>United States v Currency
22 $267,961.07</u>, 916 F2d 1104, 1108 (6th Cir 1990).
23         Dyke Limited did not file an answer before the November
24 24, 2004, deadline but sought and received an extension to file
25 until December 24, 2004.  Hinds Decl at 2 ¶ 5, Exh A.  Then, in
26 late December 2004, Dyke Limited's counsel informed the government
27 that the corporation would no longer pursue its claim to the
28 defendant funds.  Hinds Decl at 2 ¶ 6.  In the ten months that have

7

passed since Dyke Limited filed its statement of interest, it has not answered the complaint.  Accordingly, the time to file an answer has long since passed and to further continue this action would thwart the goals underlying Supp Rule 6(C).

Third, entry for default is proper if no other parties have filed a statement of interest in the property.  Admir LR 6-2(c).  Dyke Limited's verified statement of interest to the defendant funds is not valid because it was filed beyond the required deadline.  Such claims must be filed within 30 days "after the earlier of (1) the date of service of the Government's complaint or (2) completed publication of notice under Rule C(4)."  Supp Rule C(6)(a)(i)(A).  Alternatively, Supp Rule C(6)(a)(i)(B) allows the court to determine a time in which a claim may be filed.  Although the government served Dyke Limited on October 1, 2004, Dyke Limited did not file its claim until November 4, 2004.  Doc ## 5, 8.  Hence, Dyke Limited did not file a claim of interest within the 30 day deadline following service and its claim should be barred under the strict compliance standard of Supp Rule C.

Even if Dyke Limited's untimely statement of interest is accepted, an entry of default is appropriate because Dyke Limited's attorney told the government that it did not want to pursue its claim of interest in December 2004.  Hinds Decl at 2 ¶ 6.  Dyke Limited's failure to file an answer is consistent with its statement to the government.  Accordingly, Dyke Limited's claim no longer carries any weight.

Additionally, Liquidating Trust's verified statement of interest to the defendant funds presently does not bar entry of default.  Although Liquidating Trust's verified statement of

8

interest did bar the government's initial motion for entry of default on March 25, 2005, a subsequent agreement removed this impediment. On April 27, 2005, Liquidating Trust agreed to settle in consideration for the government distributing the balance of the defendant funds to Liquidating Trust, and the parties have in fact since settled. Doc #18 at 2:11-12; Doc #25. Because no other valid statement of interest was pending, the court properly directed the clerk to enter default against Dyke Limited on April 28, 2005. Doc #19.

### III

Default judgment may be entered in accordance with FRCP 55(b) any time after default has been entered. Admir LR 6-2. FRCP 55(b) requires that if a party fighting default judgment has appeared in an action, then the party shall be served written notice of the application of judgment at least three days prior to the hearing. Here, the government filed its motion for default judgment on June 23, 2005, and electronically served Dyke Limited's attorney with written notice of the default judgment on that date. Mot Def Judg at 6. Additionally, Dyke Limited's attorney was sent two additional electronic notices from the court clerk, on July 5, 2005, and July 22, 2005, because of continuances in the default judgment hearing. Doc ## 23, 24. In summary, Dyke Limited was properly served with written notice and given more than adequate time to prepare and respond for the default judgment hearing.

Despite having over two months to prepare, Dyke Limited has not filed a timely opposition to this motion. See Civ LR 7-3 (requiring that a party file its opposition or statement of

nonopposition no later than 21 days before the hearing date). Because Dyke Limited has not answered the government's complaint, nor opposed any of the government's motions, the court sees no reason to delay ruling on this matter any further. Additionally, the court finds that the verification of the complaint signed by FBI Special Agent Lori Johnston satisfies the government's initial burden of showing probable cause to believe that the funds in account 428 are traceable to Hilsenrath and Klarman's fraud against US Wireless.

IV

For the foregoing reasons, the court GRANTS the government's motion for default judgment.  The clerk is directed to close the file, terminate all pending motions and vacate all scheduled hearing dates.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Judge